UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

ROBERT SANDERS,

                            Plaintiff,

   -v-

CITY OF NEW YORK et al.,

                          Defendants.

----------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:

14 Civ. 6156 (PAE) (JCF)

<u>OPINION & ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/8/16

PAUL A. ENGELMAYER, District Judge:

      *Pro se* plaintiff Robert Sanders brings this action under 42 U.S.C. § 1983 alleging that his

constitutional rights were violated when jail officials failed to provide him an extra mattress or a

longer bed following complaints that his defective bed and mattress were causing him severe

back pain.  Defendants moved to dismiss.  Before the Court is the December 8, 2015 Report and

Recommendation of the Hon. James C. Francis IV, United States Magistrate Judge,

recommending that the Court grant the motion to dismiss.  Dkt. 39 ("Report").  For the following

reasons, the Court adopts the recommendation of the Report and dismisses this action with

prejudice.

**I.**      **Background**

      The following summary is drawn from the account of the facts provided in the Report, to

which no party objects, and from Sanders's consolidated opposition to dismissal and Third

Amended Complaint, Dkt. 31 ("TAC").[1]  This summary reflects a liberal construction of

---

[1] Sanders filed a timely objection to the Report, Dkt. 44, but the objection simply recapitulated
the facts alleged in the TAC.

Sanders's submissions, in light of his *pro se* status.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

In substance, Sanders alleges that, at three separate New York City Department of Correction ("DOC") jails, he was issued a defective bed and mattress that caused him severe back pain, culminating in a diagnosis of arthritis, a bent spine, and back spasms.  Sanders alleges that, after medical staff informed him that they were not authorized to recommend either an extra mattress or a longer bed and instead prescribed pain-killers, he sent written complaints to various senior DOC and jail officials—the six defendants named in the TAC.

Specifically, Sanders "filed a complaint" with former DOC Commissioner Dora Schriro, but received no response.  TAC ¶¶ 7–8.  He then "wrote" former Warden Vasquez of the Vernon C. Bain Correctional Center ("VCBC") and "explained his complaint," but was transferred to the George Motchan Detention Center ("GMDC") shortly thereafter.  *Id.* ¶ 8.  Sanders then "went to Warden Duffy [of GMDC], and explained his situation to him in writing," but Warden Duffy "never returned any response."  *Id.* ¶ 11.  Sanders then filed a grievance, to which there was no response.  *Id.*  Sanders was then sent to "ARDC," now known as the Robert N. Davoren Center ("RNDC"), where he "again explained his complaint in writing to Warden Perino."  *Id.* ¶ 15.  In early 2015, when Sanders was reincarcerated at VCBC, he "wrote to the new Warden C. Saunders and the new [DOC] Commissioner Joseph Ponte, to address the issue of the defective mattress and the small bed."  *Id.* ¶ 20.  The only response he received was a letter from the Director of Constituent Services in the DOC acknowledging receipt of his most recent letter, from July 25, 2015, and stating that it would be forwarded to the appropriate unit for further investigation.  TAC at 7.

On July 16, 2014, Sanders filed the initial Complaint. Dkt. 1. On December 9, 2014, the Court dismissed the Complaint, with leave to amend, for failure to state an Eighth Amendment claim, failure to plead the personal involvement of the named defendants, and failure to state a municipal liability claim against the City of New York ("City"). Dkt. 12. On January 13, 2015, Sanders filed an Amended Complaint, Dkt. 13, and on January 15, 2015, filed a functionally (if not literally) identical Second Amended Complaint, Dkt. 14. On April 28, 2015, the case was referred to Judge Francis for general pretrial supervision and for a Report and Recommendation on the anticipated motion to dismiss. Dkt. 21.

On July 14, 2015, defendants moved to dismiss, Dkt. 26, and submitted a memorandum of law in support, Dkt. 27. On July 29, 2015, Judge Francis granted Sanders leave to file another amended complaint along with his opposition to the motion to dismiss, Dkt. 30, which he did on August 21, 2015, Dkt. 31. On September 10, 2015, defendants filed a reply brief. Dkt. 33.

On December 8, 2015, Judge Francis issued the Report, recommending that the Court grant the motion to dismiss on two grounds: (1) failure to exhaust all administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); and (2) failure to allege the personal involvement of any of the defendants. On February 17, 2016, Sanders filed an objection, which merely restated his factual allegations. Dkt. 44.

## II.     Discussion

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate's findings, the district court must make a *de novo* determination as to those findings. *Id.* § 636(b)(1). However, if a party "makes only conclusory or general objections, or simply reiterates the original

3

arguments, the Court will review the Report strictly for clear error." *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ. 5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008), *aff'd*, 367 F. App'x 210 (2d Cir. 2010) (summary order).  And, while *pro se* parties are, as always, treated leniently in making objections, their objections to a Report "must be specific and clearly aimed at particular findings." *Id.*  In light of Sanders's mere recapitulation of the allegations in the TAC, review for clear error is appropriate here.

### A.    Personal Involvement

Having carefully reviewed Judge Francis's Report, the Court adopts Judge Francis's second, independent rationale for recommending dismissal:  Sanders's failure to allege the personal involvement of any defendant.  *See* Report at 8–9.  The Court finds no clear error in Judge Francis's holding that "[a] brief exchange of letters does not provide the requisite level of personal involvement by an official necessary to establish § 1983 liability."  Report at 9 (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).

The Court does note that the Second Circuit recently distinguished *Sealey* on the ground that it involved a claim that was dismissed on summary judgment, not on the pleadings.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013).  In *Grullon*, the district court had dismissed a *pro se* plaintiff's § 1983 claims against a warden in his individual capacity for failure to adequately plead the warden's personal involvement in the alleged constitutional violations.  The district court denied the plaintiff's request for leave to amend the complaint to include an allegation that he had sent the warden a letter describing the constitutional violations. *See Grullon v. City of New Haven*, No. 10 Civ. 776 (SRU), 2011 WL 2680843, at *4 (D. Conn. July 8, 2011).  The district court reasoned that, even if the letter were considered, "Grullon [did] not allege that the Warden actually received the letter or whether he took any action in response

4

to the letter." *Id.*  The district court continued, "The fact that a prisoner sent a letter to a supervisory official does not establish the requisite personal involvement of the supervisory official," and "a supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official." *Id.* (citing *Sealey*, 116 F.3d at 51).

The Second Circuit vacated.  It held that, "[a]t the pleading stage, even if Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference . . . that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained."  720 F.3d at 141.

The Second Circuit's decision in *Grullon* has been read in different fashions by district courts in this Circuit.  Some have read the above language to mean that an inmate who pleads no more than that he wrote to a prison official about allegedly unconstitutional prison conditions, and that those conditions were not thereafter remedied, adequately pleads the personal involvement of that official.  *See, e.g.*, *Jean-Laurent v. Lane*, No. 11 Civ. 186 (NAM) (TWD), 2014 WL 5335981, at *9 (N.D.N.Y. Oct. 20, 2014), *report and recommendation adopted*, 2014 WL 5335981, at *1; *Castro v. Heath*, No. 12 Civ. 1250 (MAD), 2013 WL 5354241, at *8 (N.D.N.Y. Sept. 23, 2013).  Others, however, have continued to dismiss complaints that base a claim of personal involvement solely on the supervisory prison official's receipt of a complaint or grievance.  *See, e.g.*, *White v. Schriro*, No. 14 Civ. 3204 (AT), 2015 WL 4470168, at *4 (S.D.N.Y. July 15, 2015); *Acevedo v. Fischer*, No. 12 Civ. 6866 (RA), 2014 WL 5015470, at *16 (S.D.N.Y. Sept. 29, 2014); *Lowery v. City of New York*, No. 10 Civ. 7284 (KBF), 2014 WL 2567104, at *5–6 (S.D.N.Y. June 6, 2014).  One such court explained that *Grullon* is best

understood not as "a sea change in the law, but, rather, merely a reminder that, particularly in *pro se* cases, judges must afford plaintiffs a sufficient opportunity to plead facts that could establish a defendant's personal involvement before dismissing civil rights complaints." *Ciaprazi v. Fischer*, No. 13 Civ. 4967 (VEC) (FM), 2015 WL 1315466, at *8 (S.D.N.Y. Feb. 24, 2015), *report and recommendation adopted in part, rejected in part on other grounds*, 2015 WL 1315676 (S.D.N.Y. Mar. 24, 2015). In *Grullon*, that court observed, "it was possible that the supervisory defendant had not only received a letter from the plaintiff but also had responded to it," and therefore leave to amend was necessary. *Id.*

The Court finds the latter, narrower reading of *Grullon* more persuasive. Notably, the Second Circuit there, while distinguishing *Sealey* based on its procedural posture as a summary judgment motion, did not distinguish or criticize other cases dismissing claims for inadequately pled personal involvement. In particular, in *Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009), the Second Circuit itself had affirmed a district court's holding that a complaint inadequately pled personal involvement where it alleged that plaintiff "filed complaints" with the DOC commissioner and deputy commissioner. (The Circuit did grant leave to amend.) In *Grullon*, the Circuit, far from undermining *Shomo*, cited that decision with approval. *See* 720 F.3d at 139–40.

Here, the core allegation in Sanders's TAC is that the officials did not respond to his letters, apart from sending him the form response from the DOC Director of Constituent Services, dated August 10, 2015, which stated that the letter would be "forwarded to the appropriate unit within [the DOC] for further investigation." TAC at 7. There is, however, no allegation of actual eyes-on receipt by any named defendant of any of Sanders's written grievances. Had the facts pled suggested that the defendant prison officials rebuffed his requests

6

for a second mattress or a longer bed,[2] Sanders may well have been able to adequately plead their personal involvement.  But absent such an allegation, the mere sending and presumed receipt by some prison employee of a letter to a prison official—especially without any indication of how and to whom the letter was addressed, by what means it was sent, and whether any response issued—is not sufficient to plead the official's personal involvement in a violation of the inmate's constitutional rights.  *See Grullon*, 720 F.3d at 141 (stating that the "reasonable inference" that the warden actually read a letter that was sent to him requires "factual allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means"); *Guillory v. Cuomo*, 616 F. App'x 12, 14 (2d Cir. 2015) (summary order) (affirming dismissal where plaintiff "did not allege when and where the letters were sent, what they said, or how they were sent").

This outcome is sensible.  It reflects the reality that senior DOC and prison officials "receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them."  *Walker v. Pataro*, No. 99 Civ. 4607 (AJP), 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).  In this context, the lack of a response cannot be assumed, without more, to reflect a senior official's personal awareness of the particular inmate's grievance, let alone a

---

[2] The Court liberally infers that this is what Sanders requested in his letters; Sanders's shorthand descriptions of these letters in the TAC do not state as much.  Of course, such a request for special consideration would need to be justified by reference to a preexisting medical condition necessitating a second mattress or a longer bed.  *See Howard v. City of New York*, No. 12 Civ. 4069 (PAE) (JCF), 2012 WL 7050623, at *9 (S.D.N.Y. Dec. 20, 2012), *report and recommendation adopted as modified*, 2013 WL 504164 (S.D.N.Y. Feb. 11, 2013) ("A plaintiff may state a valid claim of a constitutional violation, for example, if he can show that (1) he had a preexisting medical condition requiring a special bed to protect against serious damage to his future health; (2) he made that medical condition known to prison officials; (3) he requested a special bed to accommodate such medical condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety." (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002)) (internal quotation marks and alterations omitted)).

decision to ignore it.  The contrary holding—that a senior prison official may be held personally liable, under § 1983, for failing to address a complaint raised in a prisoner's letter where there is no concrete pleading that the official was even personally aware of the letter—would come perilously close to "liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability."  *Id.*  As the Second Circuit has noted, the personal involvement of a supervisory defendant can be established by evidence that, *inter alia*, the defendant, "after being informed of the violation through a report or appeal, failed to remedy the wrong."  *Grullon*, 720 F.3d at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  But the words "through a report or appeal" signal the need for *some* concrete basis on which to infer that the supervisory official personally was aware of the letter and thereafter failed to act.[3]  That a letter was sent to the official's office, without more, does not clear this bar.  And here, Sanders's TAC pleads no facts beyond that.

The Court's review of Judge Francis's Report and Recommendation, as noted, is for clear error.  For the foregoing reasons, the Court finds no error—let alone a clear one—in his holding that the letters alleged here do "not provide the requisite level of personal involvement by an official necessary to establish § 1983 liability."  Report at 9.  Therefore, the Court adopts the Report on this point.

---

[3] The lack of a response to the one apparently formal "grievance" filed by Sanders does not suggest the personal involvement of any of the named supervisory defendants.  Nor are any of these defendants personally implicated by Sanders's allegation (liberally construed) that there was a policy of denying second mattresses or longer beds.  *See* TAC ¶ 5 ("The doctor [at VCBC] informed [Sanders] that he could not give him an authorization for a second mattress, nor did he have the power to authorize a longer bed.").

### B.      Failure to Exhaust Administrative Remedies

The Court does not, however, adopt the Report's analysis regarding Sanders's failure to exhaust administrative remedies—its alternative basis for recommending dismissal.

The Report notes that Sanders "never indicates that he filed an administrative appeal after he did not receive a favorable response" to his grievances.[4]  Report at 6.  The Report relies on *Garvin v. Rivera*, No. 13 Civ. 7054 (RJS), 2015 WL 876464 (S.D.N.Y. Feb. 28, 2015), for the proposition that "the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Id.* at *4.  The Report then considers whether this failure to exhaust may be excused under the framework of *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), which considers: (1) "whether administrative remedies were in fact available to the prisoner," (2) "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Id.* at 686 (internal quotation marks omitted).  The Report then correctly notes that Sanders has not argued that any of these factors favor him or alleged any facts supporting such a finding.  Report at 8.

However, such pleadings were not necessary at this stage.  Notably, Judge Sullivan, in *Garvin*, recognized that "the mere absence of allegations that would support an estoppel or special circumstances argument" does not give rise to the inference that no such arguments are

---

[4] The Court need not decide whether the letters that Sanders sent to various wardens and to DOC officials constitute proper grievances.  The Court assumes *arguendo* that they do.  In any event, Sanders alleges that, on one occasion, he "filed a grievance."  TAC ¶ 11.

available.  2015 WL 876464, at *5.  As he noted, the Supreme Court has held that, "[b]ecause the failure to exhaust administrative remedies is an affirmative defense, prisoner plaintiffs are 'not required to specially plead or demonstrate exhaustion in their complaints.'"  *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)).  For this reason, courts in this Circuit, rather than granting motions to dismiss on this ground, "have frequently converted [such motions] to motions for summary judgment on the limited issue of administrative exhaustion."  *Id.* (citing *Lovick v. Schriro*, No. 12 Civ. 7419 (ALC), 2014 WL 3778184, at *5 (S.D.N.Y. July 25, 2014); *Stevens v. City of New York*, No. 12 Civ. 1918 (JPO), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012); *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

Therefore, were dismissal not otherwise appropriate for failure to plead personal involvement, the Court would convert the instant motion to dismiss into a motion for summary judgment and allow limited discovery on the issue of exhaustion, without prejudice to defendants' moving for summary judgment on that issue.

### C.    Leave to Amend

"[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once."  *Grullon*, 720 F.3d at 140.  After that, leave to amend may be denied, in the court's discretion, "if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order).  Leave to amend may also be denied for, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, Sanders has twice now been granted leave to amend.  The Court dismissed the initial Complaint on the ground, *inter alia*, that Sanders failed to plead personal involvement. Dkt. 12.  And Judge Francis granted leave to amend again following the filing of the motion to dismiss.  Dkt. 30.  Thus, Sanders has had two opportunities, since the requirement of personal involvement was explained, to adequately plead that element.  Nevertheless, Sanders has continued to allege the involvement of supervisory prison officials in conclusory and inadequate terms.  The Court therefore denies leave to amend for repeated failure to cure this deficiency. "Three bites at the apple is enough."  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997)) (internal quotation marks omitted).

Independently, in the Court's judgment, further amendment would be futile.  If Sanders, like the plaintiff in *Grullon*, had heretofore been silent about how officials had responded to his correspondence, leave to amend might be appropriate to enable him to address that issue.  But Sanders has made allegations as to that issue—he has made clear that his theory of liability lies in the lack of a responsive action following his correspondence.  However, as the Court has explained, this allegation, unaccompanied by any specific pleadings giving rise to an inference that the defendant official personally received or engaged with Sanders's letters, is inadequate to plead personal involvement.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss Sanders's Third Amended Complaint.  The Clerk of Court is directed to terminate the motion pending at docket number 32 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 8, 2016
       New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ROBERT SANDERS,                     :   14 Civ. 6156 (PAE) (JCF)
                                    :
              Plaintiff,            :        REPORT AND
                                    :        RECOMMENDATION
                                    :
     - against -                    :
                                    :
THE CITY OF NEW YORK, et al.,       :
                                    :
              Defendants.           :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:

     Robert Sanders brings this action pro se pursuant to 42 U.S.C.
§ 1983, alleging that his Eighth Amendment rights were violated
when he was issued "defective" mattresses at three facilities on
Rikers Island.  The defendants move to dismiss the Third Amended
Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  For the reasons that follow, I recommend that the
motion be granted.

Background

     In accordance with the standard for assessing a motion to
dismiss, see generally Erickson v. Pardus, 551 U.S. 89, 94 (2007)
(per curiam), the Court derives the following facts from Mr.
Sanders' pleadings and takes them as true.

     In January 2013, Mr. Sanders was a pre-trial detainee at the
Vernon C. Bain Center ("VCBC"), a jail facility on Rikers Island
operated by the New York City Department of Correction ("DOC").

1

(Third Amended Complaint ("3rd Am. Compl.") at 16).[1]   While
detained there, he was issued a "defective mattress" and a
"defective bed".  (3rd Am. Compl. at 16).  Forced to sleep in a
"fetal position," he developed "severe pain to his back and legs."
(3rd Am. Compl. at 17).  Mr. Sanders endured nearly six months of
chronic pain before informing the nursing staff at sick-call of his
medical problem.  (3rd Am. Compl. at 17).  When he requested
"either an extra mattress or a longer bed," the facility's doctor
informed him that he was not authorized to recommend those
treatments; instead, the doctor prescribed 800mg of Motrin.  (3rd
Am. Compl. at 17).  After using the medication for an unspecified
amount of time, the plaintiff alleges that it was no longer
effective in treating his back pain.  (3rd Am. Compl. at 17).

Mr. Sanders next filed a written complaint with the former
Commissioner of DOC, Dora B. Schriro, and the former warden of
VCBC, Warden Vasquez.  (3rd Am. Compl. at 18).  He received no
response from the Commissioner's office and was moved to the George

---

[1] On August 21, 2015, Mr. Sanders filed his opposition to the
defendants' motion to dismiss.  (Plaintiff's Opposition to the
Defendant's [sic] Request to Dismiss His Verified Complaint ("Pl.
Memo.")).  On July 29, 2015, the Court granted the plaintiff leave
to file an amended complaint.  (Memorandum Endorsement dated July
29, 2015).  Accordingly, Mr. Sanders included with his opposition
a third amended complaint, on which I rely for purposes of this
motion.  Citations thereto use the page numbers assigned by the
court's Case Management/Electronic Case Filing system.

Motchan Detention Center ("GMDC") on Rikers Island shortly after writing to Warden Vasquez. (3rd Am. Compl. at 18). At GMDC, the plaintiff was again issued a "defective mattress and a bed that failed to accommodate [his] height." (3rd Am. Compl. at 18). The plaintiff complained to the medical staff at GMDC and was prescribed medication to help manage his pain. (3rd Am. Compl. at 18). He then "went to Warden Duffy[] and explained his situation to him in writing," but Warden Duffy never responded. (3rd Am. Compl. at 19). Mr. Sanders then filed a grievance but never received a response. (3rd Am. Compl. at 19).

After being sentenced, Mr. Sanders was transferred to the Robert N. Davoren Complex ("RNDC," formerly known as ARDC) on Rikers Island, where he complained during sick-call about his "defective mattress." (3rd Am. Compl. at 19). The plaintiff received no response to a written complaint he sent to Warden Perino (who was in charge of RNDC) and was eventually transferred to the Downstate Correctional Facility ("Downstate"), a state institution. (3rd Am. Compl. at 19). When the plaintiff complained to the medical staff at Downstate about his now chronic pain, the doctor ordered an MRI scan of his back. (3rd Am. Compl. at 19-20). The MRI revealed that he was suffering from "arthritis in his lower back, a bent spine, and back spasm[s]"; the doctor prescribed 30mg of Naproxen twice a day. (3rd Am. Compl. at 20).

In February 2015, the plaintiff was again incarcerated at VCBC and "again issued a defective mattress and a small bed." (3rd Am. Compl. at 20). While in custody, he wrote a letter to the new Commissioner of DOC, Joseph Ponte, and the new warden of VCBC, C. Saunders. (3rd Am. Compl. at 20-21). In response to his complaint to the Commissioner's Office, he received a letter indicating that his grievance "[was] forwarded to the appropriate unit within [DOC] for further investigation." (Letter of Joel Duverge dated Aug. 10, 2015, attached as Exh. to Pl. Memo., at 7).

Discussion

A.    Standard of Review for a Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson, 551 U.S. at 94; DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550

4

U.S. at 557).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Erickson, 551 U.S. at 94; see also McKeown v. New York State Commission on Judicial Conduct, 377 F. App'x 121, 122 (2d Cir. 2010). In fact, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." Kevilly v. New York, 410 F. App'x 371, 374 (2d Cir. 2010) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). Even after Twombly and Iqbal, which imposed heightened pleading standards for all complaints, pro se pleadings are to be liberally construed. See Harris v. Mills, 572 F.3d 60, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. See, e.g., Paul v. Bailey, No. 09 Civ. 5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)).

B.  Inmate Grievance Process

The Prison Litigation Reform Act ("PLRA") requires that an inmate exhaust all available administrative remedies before pursuing a lawsuit under 42 U.S.C. § 1983, and a complaint may be dismissed if it pleads facts demonstrating that the exhaustion requirement has not been met. 42 U.S.C. § 1997e(a); Garvin v. Rivera, No. 13 Civ. 7054, 2015 WL 876464, at *2 (S.D.N.Y. Feb. 28, 2015). DOC's

5

internal administrative review mechanism, known  as the Inmate
Grievance and Request Program ("IGRP"), requires that a complaint
be filed within ten days of the incident giving rise to the
grievance and involves several layers of review up to the Central
Office Review Committee.  Id. at *3.[2]  It is clear from the
plaintiff's Third Amended Complaint that he did file grievances at
certain facilities.  (3rd Am. Compl. at 18-21).

However, while Mr. Sanders takes great care in noting the
facilities at which he filed complaints and the people whom he
contacted, he never indicates that he filed an administrative appeal
after he did not receive a favorable response.  "[T]he failure to
take an available administrative appeal, even when the initial
grievance receives no response, constitutes a failure to exhaust

---

[2] Specifically, in order to exhaust administrative remedies
while in the custody of DOC,

> An inmate must first file a form with IGRP staff within
> ten business days of the condition giving rise to the
> grievance. IGRP staff are required to provide an
> "informal resolution" within five business days of
> receiving the form. The dispositions of IGRP staff are
> appealable through several layers of review, up to DOC's
> Central Office Review Committee ("CORC").   The
> administrative process is complete only when the CORC
> has issued its disposition. The decision makers at each
> level of review must issue their decisions within
> certain time limits and an inmate may appeal if he "does
> not receive a timely disposition at any stage of the
> IGRP process.

Id.

available administrative remedies." <u>Garvin</u>, 2015 WL 876464, at *4.
At certain facilities, Mr. Sanders bypassed the IGRP process
completely and sent letters directly to the wardens of the facility
where he was housed or to the DOC commissioner. (3rd Am. Compl. at
18-20). Moreover, "[e]ven if [the Court] deem[s] these letters to
constitute grievances, [the] plaintiff has still failed to exhaust
his administrative remedies because he has not exhausted the
appellate remedies available to him within the DOC grievance
procedures." <u>Renelique v. Doe</u>, No. 99 Civ. 10425, 2003 WL 23023771,
at *12 (S.D.N.Y. Dec. 29, 2003).

Although the plaintiff failed to exhaust his administrative
remedies, it must also be determined whether his failure may be
excused. <u>Garvin</u>, 2015 WL 876464, at *4. That determination depends
on (1) "whether administrative remedies were in fact 'available' to
the prisoner," (2) "whether the defendants may have forfeited the
affirmative defense of non-exhaustion by failing to raise or
preserve it or whether the defendants' own actions inhibiting the
inmate's exhaustion of remedies may estop one or more of the
defendants from raising the plaintiff's failure to exhaust as a
defense," and (3) "whether 'special circumstances' have been
plausibly alleged that justify 'the prisoner's failure to comply
with administrative procedural requirements.'" <u>Hemphill v. New
York</u>, 380 F.3d 680, 686 (2d Cir. 2004) (quoting <u>Abney v. McGinnis</u>,

7

380 F.3d 663, 667 (2d Cir. 2004), and <u>Giano v. Goord</u>, 380 F.3d 670, 676 (2d Cir. 2004)).

Mr. Sanders does not assert that administrative remedies were not available to him. Nor have the defendants forfeited their exhaustion defense; rather, they have specifically asserted it. (Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss ("Reply") at 3). Mr. Sanders makes no assertion that any of the defendants attempted to prevent him from completing the IGRP process. Finally, the plaintiff has alleged no special circumstances that would allow the court to infer that obstacles existed that would prevent him from complying with the IGRP process.

Accordingly, under the <u>Hemphill</u> factors, Mr. Sanders is not excused from failing to exhaust all available remedies, and he has therefore not satisfied the requirements under the PLRA to file this suit.

C. <u>Individual Liability</u>

Even if the plaintiff had exhausted his administrative remedies, he has failed to allege that any of the individual defendants was personally involved in violating his constitutional rights. For purposes of § 1983,

> a supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the

8

custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.

Goris v. Breslin, No. 04 CV 5666, 2009 WL 1955607, at *7 (E.D.N.Y. July 6, 2009) (quoting Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997)), aff'd, 402 F. App'x 582 (2d Cir. 2010).

In his complaint, Mr. Sanders claims that he began the grievance process at VCBC by filing written complaints to Warden Vasquez and former Commissioner Dora B. Schriro. (3rd Am. Compl. at 18-19). He states that he wrote to Warden Duffy and Warden Perino while he was in custody at GMDC and RNDC, respectively. (3rd Am. Compl. at 19). After being incarcerated again in 2015, the plaintiff wrote letters to Commissioner Joseph Ponte and Warden C. Saunders. (3rd Am. Compl. at 20-21). The plaintiff asserts that the defendants are liable because they failed to address his complaints after being informed of the serious nature of his claim. (3rd Am. Compl. at 21).

A brief exchange of letters does not provide the requisite level of personal involvement by an official necessary to establish § 1983 liability. Sealey, 116 F.3d at 51. Accordingly, Mr. Sanders fails to allege that any of the individual defendants was personally involved in the alleged violations of his Eighth Amendment rights.

Conclusion

For the foregoing reasons, I recommend that the defendants'

9

motion to dismiss (Docket no. 32) be granted.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Engelmayer, Room 2201, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
December 8, 2015

Copies mailed this date:

Robert Sanders
Samaritan Village, 327 West 43rd Street
New York, NY 10036

Agnetha E. Jacob, Esq.
Assistant Corporation Counsel
100 Church Street
New York, NY 10007

10